UNITED STATES BANKRUPTCY COURT
DISTRICT OF NEW HAMPSHIRE

| | |
|---|---|
| Robert M. Kempton, Sr.<br>debtor | Chapter 13 |
| | Case No. 12-12592-BAH |
| Robert M. Kempton, Sr.<br>    v.<br>  SLM ECFC<br>  Sallie Mae, Inc. | Hearing: May 28, 2014 at 11:00 am |

OBJECTION TO CLAIM 9-1
OF SLM ECFC SALLIE MAE, INC.

  Robert Kempton, Sr., debtor in the above case, through his attorney, Richard Gaudreau, submits this objection to claims pursuant to 11 USC 502(b) and U.S. Bankruptcy Rule 3007, stating as follows:

  1. This is a core proceeding as that term is defined by Section 157(b)(2) of Title 28 of the United States Code in that it concerns claims and contested matters arising out of the administration of this bankruptcy case and rights duly established under Title 11 of the United States Code and other applicable federal law.

  2. This Court has both personal and subject matter jurisdiction to hear this case pursuant to Section 1334 of Title 28 of the United States Code, and Section 157(b)(2) of Title 28 of the United States Code.

  3. Debtor is a natural person residing at 38 Main Street, Hollis, NH.

  4. SLM ECFC c/o Sallie Mae, Inc. ("Sallie Mae") is a business organized under the laws of the United States.  According to its Proof of Claims, notices should be sent to SLM ECFC, c/o Sallie Mae Inc., 220 Lasley Ave., Wilkes-Barre, PA 18706.

  5. Sallie Mae filed Claim No. 9-1 in this case for $31,653.18.  Sallie Mae's Proof of Claim contains only a computer generated summary, and none of the original documents required by Rule 3001(c) except a promissory note redacted of all material terms except for the typed signatures of Connor Kempton and Robert Kempton and the date of May 25, 2010.

6. Debtor listed Sallie Mae's claim as disputed in his bankruptcy schedules stating "debtor disputes signing the documents for these loans." Debtor's ex-wife, Peggy Kempton, forged his electronic signature to the promissory note attached to Claim 9-1. Peggy Kempton has a history of criminal behavior consistent with that allegation.

7. At the time debtor filed bankruptcy, Peggy Kempton remained incarcerated in Massachusetts for embezzling $1,300,000 from a museum where she worked as the CFO. Exhibit 1 attaches various newspaper articles documenting the crimes which occurred from 2002 through 2008. Exhibit 1 News articles. Newspaper articles are admissible under Federal Rule of Evidence 902 as self-authenticating documents. The illegal behavior referenced in these articles was similar to that engaged in by her to forge debtor's electronic signature to the application for a student loan and promissory note.

8. In a companion case to a claim's objection already decided, Kempton v. Discover Student Loans, this court reviewed documentation corroborating Peggy Kempton's forgery of debtor's signature to two promissory notes with Discover Student Loans. The court may take judicial notice of its own docket and those pleadings are incorporated by reference as relevant to Peggy Kempton's intent, motive and opportunity to plan the forgery here at issue. On April 8, 2014, the Court issued an order sustaining debtor's objection to Claims 4 and 5. Among the documentation pertaining to the Discover forgery, Peggy Kempton's handwriting appears on multiple drafts of student loan applications with suspicious omissions of private information not believed to be available to her at the time she completed them.

9. There would have been no reason for his wife's handwriting to appear on student loan applications if he had filled them out himself nor would he have had any problem with remembering his own social security number, or providing a driver's license number. That these are suspiciously left blank on some forms only to appear on later drafts is consistent with someone practicing who does not have all necessary information at her fingertips.

10. This same pattern also appears in the unrelated forgery of debtor's name to a GE Money Bank application by Peggy Kempton. Attached is a document from GE Money Bank's approval of that credit card covered with handwritten notes in Mrs. Kempton's handwriting to remind her what debtor's social security number and date of birth was. Exhibit 2, GE Money Bank approval. Debtor would not need any written reminders for such basic information if he had filled this form out himself. This is consistent with the missing social security numbers in the Discover notes.

11. All of these forgeries occurred after Mrs. Kempton moved back into the marital home in 2008 after a long separation. Mr. and Mrs. Kempton had been estranged and living apart from 2000 to 2008. Her return to the Hollis home did not signal a reconciliation, but occurred as a result of a bail order out of Massachusetts related to the embezzlement of $1,300,000. The Court remanded her to the Hollis home because her name was still on the deed there and the court wished her to remain living in the area. Debtor's children also needed a place to live.

12. Peggy Kempton only forged debtor's name to student loans after he told her he could not afford to sign any more student loans because of the financial crisis precipitated by her criminal charges.

13. Given her forgery skills, Mrs. Kempton did not have to take 'no' for an answer.  As she did at the museum, she used the opportunity of living at 38 Main Street to gain access to debtor's private information, forging his name to various student loans including the Sallie Mae loan dated May 25, 2010.  Mr. Kempton was hospitalized on May 25, 2010, did not have access to a computer, and was not aware Peggy Kempton forged his electronic signature to that loan.  Debtor never gave her permission to affix his electronic signature to this student loan.  This loan did not benefit Mr. Kempton in any way.  Exhibit 6, debtor's affidavit.

14. Debtor only discovered the forgery in 2011 when payments became due.  Debtor notified Sallie Mae of the problem in 2011 as demonstrated by the attached letter.  Exhibit 3, Sallie Mae letter of November 11, 2011.

15. Debtor filed an identity theft complaint with Hollis Police Department on November 11, 2011.  See attached Exhibit 4, Police reports.

16. Mrs. Kempton admitted to a police officer she forged debtor's electronic signature to the Sallie Mae loan.  Exhibit 4, page 4.  Although she claimed debtor authorized her action, there is nothing other than Mrs. Kempton's word to corroborate that allegation. This prompted the police to view the forgery complaint as a civil matter and not file charges.  Given her willingness to embezzle and forge financial documents, an assumption of honesty given the unbroken chain of dishonest actions would be an unexplained aberration.  Her own self-interest clearly compelled her to continue to fabricate because new criminal charges could only exacerbate the length of her incarceration or delay her parole.

17. Debtor provided a copy of the police reports to Sallie Mae along with a comprehensive fraud affidavit on March 26, 2012.  See Exhibit 5 – Sallie Mae fraud affidavit. Mrs. Kempton admitted to a police officer she forged debtor's electronic signature to a Sallie Mae loan.  Although she claimed debtor authorized her action, there is nothing other than the word of a convicted felon to corroborate that allegation.  Further charges could have jeopardized her release from jail which occurred in 2014.  Her statement did prompt the police to view the forgery complaint as a civil matter and not press criminal charges against her.

18. Sallie Mae never bothered to contact Mrs. Kempton, or her sons to investigate the underlying circumstances and did little, if any, independent investigation.

19. Since student loan forgeries pale in comparison to the embezzlement of $1,300,000, there is no question Peggy Kempton was ready, willing and able to engage in such behavior. Her criminal convictions and student loan forgeries share the common traits typical of identity thefts. Under New Hampshire law, identity theft has been defined as:

> the unauthorized taking or use of an individual's personal information to obtain credit, goods, services, money, or property, with the intent to commit fraud. In this paragraph, personal information includes, but is not limited to, an individual's first name or initial and last name in combination with any one or more of the following data elements, when either the name or the data elements are not encrypted:
>
> (a) Social security number.
> (b) Driver's license number.

RSA 359-B:22.

20. The newspaper articles in Exhibit 1 reveal startling similarities between Peggy Kempton's criminal acts and the forgery at issue here, including the following:

> (a) Mrs. Kempton stole $1.3 million from a museum from 2002 through 2008 where she worked as a CFO. The forgery alleged here on May 25, 2010 occurred after she had left employment at the museum on or around 2008. Exhibit 1, News articles;
>
> (b) Mrs. Kempton was adept in the art of using her access to confidential information to commit identity theft. The June 23, 2009 press release from the Massachusetts Attorney General's office stated "Kempton stole funds ... using 14 different credit cards. One of the credit cards was in the name of a co-worker who had no knowledge that the card existed and was being used by Kempton." Exhibit 1, June 23, 2009 Press Release. The application for a credit card includes much of the same personal information required for a student loan application.
>
> (c) These articles indicate Mrs. Kempton used part of the stolen funds to pay for her children's college tuition. Since the thefts stopped in 2008, it is reasonable to assume payment of college tuition became problematic after that date. The student loan forgery at issue here occurred in 2010.
>
> (d) These articles document how skilled Mrs. Kempton was at hiding her criminal actions from disclosure for long periods of time.

21. The credit card applications both at work and at home by her involved the use of social security numbers. The Discover loan applications involve the use of debtor's driving license number, social security information and debtor's present income.

22. Once she was living in the same house as debtor, she gained easy access to that type of information. As a pilot on the road for days at a time, it would have been a simple matter for her to search the house at 38 Main Street for the necessary information.

23. Sallie Mae had redacted all of the material terms of the promissory note attached to its Proof of Claim, so it's impossible to determine whether this promissory note is governed by UCC or by the Uniform Electronic Transactions Act ("UETA"). The UETA states:

<u>Attribution and Effect of Electronic Record and Electronic Signature</u>

I. An electronic record or electronic signature is attributable to a person if it was the act of the person. The act of the person may be shown in any manner, including a showing of the efficacy of any security procedure applied to determine the person to which the electronic record or electronic signature was attributable.

II. The effect of an electronic record or electronic signature attributed to a person under paragraph I is determined from the context and surrounding circumstances at the time of its creation, execution, or adoption, including the parties' agreement, if any, and otherwise as provided by law.

<u>RSA</u> 294-E:9 (2001).

24. Debtor did not authorize anyone to affix his electronic signature to the Sallie Mae student loan.

25. By filing a Proof of Claim, Sallie Mae submitted to the jurisdiction of the New Hampshire Bankruptcy Court. <u>Langenkamp v. Culp</u>, 111 S.Ct. 330 (1990) to resolve this objection.

WHEREFORE debtor through his attorney requests the Court:

A. Sustain the objection on Claim No. 9-1.

B. Find that $0.00 is owed on Proof of Claim with a specific factual finding that debtor is not obligated on the promissory note attached to Claim 9-1, dated May 25, 2010.

C. Schedule discovery deadlines, if necessary, and a final hearing date.

D. If contested, award debtor attorney's fees pursuant to the right to reciprocal attorney's fees under RSA 361-C:2 if debtor prevails.

      E. Award such other relief as is just and equitable.

DATED:  4/18/2014   Respectfully Submitted,
Robert Kempton
Through his attorney

 /s/ Richard D. Gaudreau
Richard D. Gaudreau, BNH 02119
Richard D. Gaudreau, Attorney at Law, PC
395 Main Street
P.O. Box 1359
Salem, NH 03079
(603) 893-4300
Office@AttorneyGaudreau.com